FILED

08/04/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0247

DA 24-0247

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 180N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

HARRY WILLIAM RICHARDS,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC-23-40
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James C. Murnion, Murnion Law, Missoula, Montana

      For Appellee:

      Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

      Marcia Jean Boris, Lincoln County Attorney, Libby, Montana

Submitted on Briefs: April 1, 2026

Decided: August 4, 2026

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Harry William Richards pleaded nolo contendere to one count of felony criminal endangerment in the Nineteenth Judicial District Court pursuant to a plea agreement. In exchange, the prosecution agreed to recommend a three-year deferred sentence. The Presentence Investigation Report recommended the imposition of several standard fees and surcharges, as well as restitution based on the included victim's affidavit. Each party discussed the financial obligations at sentencing, and the court imposed most of the fees and surcharges and just over $2,500 in restitution. Richards now appeals his sentence, contending that (1) the District Court committed plain error when it imposed financial obligations that the prosecutor recommended and (2) the District Court erred in its determination of the amount of restitution. We affirm.

¶3 On April 14, 2023, Richards's neighbor, Alicia Dorman, was driving with her two young children in the car on a remote road that leads through Richards's property to her family's home when Richards fired three shots toward her vehicle as she drove by. The State charged Richards with felony criminal endangerment.

¶4 Richards agreed to plea nolo contendere in exchange for the prosecution recommending the following disposition:

2

> Pursuant to this agreement the sentence shall be deferred for a period of three years if eligible. If the defendant is not eligible for a deferred sentence, the defendant shall be sentenced to three years at the department of corrections with all suspended.

The author of the presentence investigation report (PSI) noted that Richards had not cooperated in the investigation, except to complete the questionnaire; that Richards expressed "a deep resentment towards law enforcement and the court system regarding his arrest"; and that he "at no time [took] accountability for his actions or prior convictions."

¶5 At the December 18 sentencing hearing, defense counsel requested a continuance to further discuss the plea agreement with Richards before sentencing to aid in a successful transition into probation. Without objection, Dorman—who had traveled to Libby for the hearing—presented her victim impact statement. Neither party asked her any questions. The court then advised that she could attend the second hearing remotely, which she did. At the December 29 sentencing hearing, Richards testified to support his claims that he was unable to pay the recommended financial obligations. The State recommended a three-year deferred sentence per the plea agreement and that the court follow the PSI's recommended conditions but waive the public defender fee. Defense counsel argued that Richards was unable to pay any financial obligations and that the amount of restitution was unreasonable, contending that Dorman did not need to attend all five proceedings and the claimed cost of childcare was excessive.

¶6 The District Court sentenced Richards to a three-year deferred sentence. Except for $38 in claimed restitution, the court found Dorman's pecuniary losses to be reasonable. Removing the fees for the costs of defense counsel and the prosecution, the District Court

3

imposed all other recommended financial obligations, totaling $2,852.89, plus an undetermined amount for a supervision fee. Richards did not argue at sentencing that the prosecutor breached the plea agreement by recommending the financial obligations set forth in the PSI.

¶7 When a defendant claims for the first time on appeal that the prosecutor breached a plea agreement, this Court may within its discretion review for plain error. *State v. Walton*, 2025 MT 186, ¶ 6, 423 Mont. 444, 573 P.3d 1213 (citing *State v. Rardon*, 2002 MT 345, ¶¶ 16-17, 313 Mont. 321, 61 P.3d 132 (*Rardon II*)); *State v. Stratton*, 2017 MT 112, ¶ 7, 387 Mont. 384, 394 P.3d 192 (citation omitted). We will reverse for plain error only when the breach is "so obvious and substantial that failure to notice and correct it affected the fairness, integrity[,] or public reputation" of the proceedings. *Rardon II*, ¶ 16; *Stratton*, ¶ 7.

¶8 A sentencing court must comply with §§ 46-18-241 through -249, MCA, when imposing criminal restitution. *State v. Cole*, 2020 MT 259, ¶ 9, 401 Mont. 502, 474 P.3d 323. Conclusions of law determining the measure of restitution are reviewed for correctness. *State v. Johnson*, 2011 MT 116, ¶ 13, 360 Mont. 443, 254 P.3d 578. We will not disturb a district court's findings of fact when imposing restitution unless they are clearly erroneous. *State v. Thorpe*, 2015 MT 14, ¶ 6, 378 Mont. 62, 342 P.3d 5.

**Prosecution's Recommendation on Financial Obligations**

¶9 Richards concedes that he failed to preserve his claim that the State breached the plea agreement. Even so, Richards contends this Court should reverse for plain error

because the prosecution breached the implied covenant of good faith and fair dealing, thereby rendering his plea involuntary.

¶10   A plea agreement is a binding contract between the State and a defendant subject to contract law. *State v. Rahn*, 2008 MT 201, ¶ 14, 344 Mont. 110, 187 P.3d 622 (citing *State v. Rardon*, 2005 MT 129, 327 Mont. 228, 115 P.3d 182 (*Rardon III*)); *State v. Bowley*, 282 Mont. 298, 310-11, 938 P.2d 592, 599 (1997)).  For a defendant to retain the benefits of agreeing to enter a plea of guilty or nolo contendere, the State must satisfy its countervailing contractual obligation and "meet strict and meticulous standards of both promise and performance . . . ." *Bowley*, 282 Mont. at 310-11, 938 P.2d at 599.  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Bowley*, 282 Mont. at 310-11, 938 P.2d at 599; *State v. McDowell*, 2011 MT 75, ¶¶ 23, 25, 360 Mont. 83, 253 P.3d 812 (citing *State v. Rardon*, 1999 MT 220, ¶ 14, 296 Mont. 19, 986 P.2d 424 (*Rardon I*)).  When the State agrees to recommend a specific sentence, the prosecutor is obligated to act fairly, in good faith, *State v. Collins*, 2023 MT 78, ¶ 15, 412 Mont. 77, 528 P.3d 1106, and "approach sentencing in a manner that will not undermine the [plea] agreement," *McDowell*, ¶ 14 (citation omitted).  *See also Bowley*, 282 Mont. at 310-11, 938 P.2d at 599.  The prosecutor properly may present "information required or authorized by statute for the court to consider at sentencing," so long as it remains within the given statute's limited scope. *Collins*, ¶ 17 (citations omitted).  A prosecutor may do so, however, only "if it is not *expressly prohibited* by the terms of the plea agreement, the information is relevant to the sentencing, and the case is presented in

5

a fair manner not likely to undermine the plea agreement . . . ." *Collins*, ¶ 17 (emphasis added; citations omitted); *McDowell*, ¶¶ 20-21, 24.

¶11    On appeal, Richards analogizes the prosecution's recommendation that he pay financial obligations to our holdings in *Bowley*, *Rardon I*, *Rardon II*, and *Rahn*. In *Rardon II*—the only one of these cases in which the Court reversed for plain error—we held that the prosecutor violated the terms of the plea agreement when he solicited inflammatory testimony and reiterated negative facts about the defendant. *Rardon II*, ¶¶ 22, 25. Accordingly, we concluded that the recommendation was "mere lip service" to the terms of the plea agreement. *Rardon II*, ¶¶ 19-20, 22, 25; *see also Rahn*, ¶¶ 5, 19, 23.

¶12    This case is readily distinguishable. The District Court expressed its own concerns regarding Richards's behavior and inability to comply with the conditions of his deferred sentence. Dorman provided her statement, emphatically disputing the plea agreement's recommended deferred sentence and explaining her experiences that led her to believe the justice system would not hold Richards accountable because everyone was afraid of him. But the prosecutor did not waver. He cross-examined Richards with a few, short follow-up questions on his debt and vocational certificates but did not solicit inflammatory facts from Dorman or Richards, emphasize any of the numerous negative aspects of the PSI, or comment on Dorman's opposition to the recommended sentence. What is more, unlike in *Rardon I* and *Bowley*, the prosecution fulfilled its obligation by expressly recommending a three-year deferred sentence consistent with the stated terms of the plea agreement. *See Rardon I*, ¶¶ 4, 16; *Bowley*, 282 Mont. at 302-03, 938 P.2d at 594-95.

6

¶13 Instead, this case is like *State v. McDowell*. There, the prosecutor recommended the sentence set forth in the plea agreement. *McDowell*, ¶ 9. On appeal, the defendant argued that the prosecutor nonetheless breached the plea agreement when he recommended that the court impose the PSI's recommended probationary conditions for a suspended sentence—terms that were not included in the plea agreement. *McDowell*, ¶ 22. Noting that the defendant "immediately benefitted by avoiding potential sentences" when he entered the plea agreement and that the prosecutor had "fulfilled his additional promise" by recommending the sentence set forth in the plea agreement, we held that it was "unreasonable" for the defendant to expect that no conditions would be placed on his suspended sentence. *McDowell*, ¶¶ 24-25. We added that the defendant "received the benefits he bargained for" and could not argue on appeal that "his plea was based to a significant degree on any unfulfilled promise." *McDowell*, ¶ 25 (internal quotations omitted).

¶14 Here, the maximum penalty for the charge against Richards—felony criminal endangerment—is a fine of $50,000 or imprisonment for at least ten years, or both. Section 45-5-207, MCA. Like in *McDowell*, Richards immediately benefited from the plea agreement by avoiding these potential sentences, and the prosecution fulfilled its obligation to recommend a sentence without imprisonment per the plea agreement's express terms. Most of the financial obligations identified in the PSI and recommended by the prosecutor are mandated by statute. Those fees not required by statute the prosecution either did not recommend or the District Court did not impose. Virtually all of the recommended conditions of the PSI were standard conditions for a deferred or suspended sentence and

mandated by law. At the December 29 sentencing hearing, both parties discussed the financial obligations recommended in the PSI, and the court made inquiry about Richards's ability to pay. Like in *McDowell*, it is unreasonable for Richards to expect that the District Court would have abstained from imposing mandatory financial obligations had the prosecutor not recommended them.

¶15 Richards has not met his burden of firmly convincing this Court, *City of Missoula v. Charlie*, 2025 MT 85, ¶¶ 17-18, 421 Mont. 403, 567 P.3d 922 (citations omitted), that he did not receive the benefit of his bargain to the extent that it "affected the fairness, integrity[,] or public reputation" of the sentencing proceedings. *Rardon II*, ¶ 17; *McDowell*, ¶¶ 23, 25 (citing *Rardon I*, ¶ 14); *Stratton*, ¶ 7.

**Determination of Restitution**

¶16 Richards maintains that Dorman's personal attendance in court was unnecessary and does not qualify as cooperation with the prosecution's investigation. The State counters that Richards's conduct and Dorman's expressed fear for her family's well-being supports Dorman's attendance at all hearings. The State notes that the law did not require the court to find that Dorman's attendance was necessary to afford restitution for attending court proceedings.

¶17 A sentencing court is required to impose full restitution for all pecuniary losses caused by the defendant's admitted or proven criminal conduct as substantiated by evidence in the record. *State v. Simpson*, 2014 MT 175, ¶ 14, 375 Mont. 393, 328 P.3d 1144 (citing § 46-18-243, MCA; *State v. Breeding*, 2008 MT 162, ¶ 19, 343 Mont. 323, 184 P.3d 313). Relevant here, § 46-18-243(1), MCA, defines "pecuniary loss" as:

8

(a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as . . . loss of income, . . . expenses reasonably incurred in attending court proceedings related to the commission of the offense, . . .; [and]

.   .   .

(d) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

¶18 The Rules of Evidence do not apply at sentencing, and the victim is not required "to substantiate restitution calculations with documentation." *State v. Aragon*, 2014 MT 89, ¶ 12, 374 Mont. 391, 321 P.3d 841 (citation omitted). "When a defendant does not present contradictory evidence, the [d]istrict [c]ourt does not err in relying on a victim's estimates of loss" when imposing full restitution. *Simpson*, ¶ 14 (citation omitted). Absent conflicting evidence, "a victim's sworn affidavit explaining the amount of loss is ordinarily sufficient to support an order of restitution." *Aragon*, ¶ 20 (citations omitted). The defendant, however, has the "due process right to explain, argue, and rebut any information presented at sentencing." *Aragon*, ¶ 12 (internal quotations omitted; citations omitted).

¶19 This Court will not disturb a district court's findings of fact unless they are clearly erroneous. *Thorpe*, ¶ 6. A finding of fact is clearly erroneous when "it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if our review of the record convinces us that the court made a mistake." *State v. Weik*, 2018 MT 213, ¶ 11, 392 Mont. 415, 427 P.3d 52 (citations omitted). Evidence is substantial when a "reasonable mind might accept [it] as adequate to support a conclusion; it consists of more

than a scintilla of evidence, but may be somewhat less than a preponderance." *State v. Jent*, 2013 MT 93, ¶ 10, 369 Mont. 468, 299 P.3d 332 (citation omitted).

¶20    In the PSI, Probation and Parole recommended that the District Court impose a restitution in the amount of $2,513.35. Dorman swore in an attached affidavit that expenses for travel totaled $635.35 for five roundtrips from her residence to the courthouse.[1]  She claimed $560 in lost wages for five eight-hour days and $38 for losing a scheduled bus route. She also swore to paying childcare for four children for two days, costing $40 per hour and totaling $1,280.

¶21    The record shows that the District Court held six hearings for Richards's criminal endangerment charge and informed Dorman at the fifth such hearing that she could attend remotely, which she did. Dorman attested that round-trip travel between her residence near Trego, Montana, and the courthouse in Libby was 194 miles. That travel—which occurred between the months of May and December—included a remote stretch of road in northwest Montana.

¶22    Defense counsel argued that Richards was generally unable to pay any financial obligations, that five trips to attend proceedings was unnecessary, and that the cost of childcare was excessive. He asked Dorman no questions to clarify or substantiate her expenses or why she came to Libby for the court proceedings. Counsel simply asked the District Court "to adjust the amount as the [c]ourt sees fit."

---

[1] The Affidavit of Victim's Pecuniary Loss states: "TRAVEL EXPENSES: 5 ROUND TRIPS TO LIBBY FROM RESIDENCE FOR COURT: 194 MILES EACH TRIP X 5 = 970 MILES @ 65.5 CENTS PER MILE = 635.35." She claimed the same five days for lost wages. Richards asked no questions about when or why Dorman traveled for "court appearances."

10

¶23　Finding Dorman to be credible and her claimed pecuniary losses to be reasonable, the District Court sentenced Richards to pay full restitution for Dorman's travel expenses, lost wages, and cost of childcare, with the exception of $38 claimed for a "lost bus route day schedule." The court then pronounced that under Montana's restitution statutes, "there's no ability to pay analysis . . . ." The court imposed restitution of $2,475.35, and a $247.54 administrative fee associated with the restitution.

¶24　The restitution statutes did not require the District Court to make a finding that Dorman's personal attendance at court proceedings was "necessary,"[2] and Richards does not in any event suggest what would qualify for such a determination. *See State v. Hicks*, 2006 MT 71, ¶ 22, 331 Mont. 471, 133 P.3d 306 ("[I]t is not this Court's obligation to conduct legal research on appellant's behalf, to guess his precise position, or to develop legal analysis that may lend support to his position."). Dorman was entitled to be present at the proceedings and to recover pecuniary losses for associated expenses. Section 43-18-243(1)(a), (d), MCA.[3] Richards did not develop the statutory arguments the Dissent makes here. Instead, without asking Dorman for any clarification or explanation of her sworn claim, he asked the District Court "to adjust the amount as the court [saw]

---

[2] The applicable statute in fact includes the phrase, "without limitation." Section 43-18-243(1)(a), MCA.

[3] Richards cites *State v. Barrick*, 2015 MT 94, 378 Mont. 441, 347 P.3d 241 to support his argument. *Barrick* is inapplicable to this case. Essential to our holding there was our interpretation of the conversion statute, § 27-1-320(1), MCA, and the damages available under that statute in an "appropriate civil action." *Barrick*, ¶ 21. This case does not involve conversion of property. Richards otherwise has not provided legal support for his argument that Dorman is not entitled to recover for the pecuniary losses for attending court proceedings.

11

fit"—in other words, to use its discretion. The court exercised its discretion, and we conclude that Richards has not shown clear error in its findings.

¶25 Dorman's victim impact statement supports why she attended all court proceedings. She described being terrified of Richards and his capacity to harm her family. Dorman described a feeling of helplessness living as his neighbor down a remote road, where law enforcement refused to arrest and serve Richards because they feared for their own safety. She described and the PSI supported Richards's continued access to firearms and complete disregard for the law. She had a significant interest not only in staying informed but also in continuing to advocate for her interests if needed.

¶26 Though Richards argued to the District Court and maintains on appeal that the cost of childcare was excessive, his assertion lacks a factual basis. He does not challenge the reasonableness of other claimed pecuniary losses, only their necessity. At sentencing, Richards did not question Dorman to ascertain how she calculated her childcare costs, even though Dorman attended both sentencing hearings and was available to testify. And Richards otherwise did not present evidence to support his contention that Dorman used improper calculations or did not accurately attest to what she had paid for childcare.

¶27 Substantial evidence is evidence that a reasonable mind may accept as adequate to support a conclusion; it consists of more than a scintilla and less than a preponderance. *Jent*, ¶ 10. The District Court's findings of fact for Dorman's sustained pecuniary losses for attending court proceedings are supported by substantial evidence, as it had discretion to rely on Dorman's sworn affidavit of the costs she incurred. *Simpson*, ¶ 14. The court did not take the view that Dorman's claim was outlandish, and Richards offers only a

conclusory argument that the amount was "excessive." Without conflicting evidence, the District Court did not clearly err in relying on Dorman's affidavit and victim impact statement to determine that her travel expenses, lost wages, and cost of childcare for attending court proceedings were reasonable.

¶28 Richards also contends that the District Court should have granted him relief from payment of restitution based on the condition "that it otherwise would be unjust to require payment as imposed . . . ." Section 46-18-246, MCA; *State v. Lodahl*, 2021 MT 156, ¶ 25, 404 Mont. 362, 491 P.3d 661 (citation omitted). Though we have held that the defendant is not required to formally petition the court for waiver or adjustment, the defendant "bears the burden to request and factually demonstrate his eligibility for relief . . . ." *Lodahl*, ¶¶ 25-26. At the sentencing hearing, Richards generally raised his indigence and inability to pay. When the District Court announced that there was "no ability to pay analysis" that went along with the restitution analysis, Richards did not object or otherwise advocate for his eligibility for relief under § 46-18-246, MCA.

¶29 In *State v. Bertsch*, we held that raising "a general objection grounded in [the defendant's] indigence" was insufficient to satisfy the defendant's burden to raise and demonstrate his eligibility for relief under § 46-18-246, MCA. 2024 MT 250, ¶¶ 8-11, 418 Mont. 425, 557 P.3d 1251 (discussing waiver or adjustment of restitution under § 46-16-246, MCA). Here, Richards raised a general objection based on his indigence. Like in *Bertsch*, Richards did not specifically present evidence or argue that sentencing him to pay the restitution would be unjust. Richards also did not challenge the restitution based on that argument when the court observed that the statute did not require an ability

13

to pay analysis. "We will not overturn a district court for an error it did not have the opportunity to address." *Bertsch*, ¶ 11 (citation omitted; brackets omitted). Because Richards bore the burden of raising and proving he was eligible for waiver or adjustment, the District Court did not err when it did not consider on its own accord whether Richards was eligible for relief.

¶30    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. Richards did not meet his burden of proof for plain-error reversal on his breach of plea claim. Substantial evidence supports the District Court's findings of fact for Dorman's claimed pecuniary loss. We affirm.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Laurie McKinnon, concurring in part and dissenting in part.

¶31    I concur with the Court's decision that we should not exercise plain error review to consider whether the prosecutor breached the plea agreement. I dissent from the Court's decision upholding the District Court's determination of restitution.

¶32    "Pecuniary loss" is defined by statute as:

14

(a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as medical expenses, loss of income, expenses reasonably incurred in obtaining ordinary and necessary services that the victim would have performed if not injured, expenses reasonably incurred in attending court proceedings related to the commission of the offense, and reasonable expenses related to funeral and burial or crematory services;

(b) the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct;

(c) future medical expenses that the victim can reasonably be expected to incur as a result of the offender's criminal conduct, including the cost of psychological counseling, therapy, and treatment; and

(d) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

Section 46-18-243(1), MCA. The District Court did not indicate whether it was awarding damages under subsection (1)(a) or (1)(b), or both. Subsections (1)(a) and (1)(b) are the only provisions of the statute applicable to the facts of this case.

¶33 Restitution statutes "'engraft[] a civil remedy onto a criminal statute, creating a procedural shortcut for crime victims who would be entitled to a civil recovery against the offender.'" *State v. Lodahl*, 2021 MT 156, ¶ 13, 404 Mont. 362, 491 P.3d 661 (quoting *City of Whitefish v. Jentile*, 2012 MT 185, ¶ 22, 366 Mont. 94, 285 P.3d 515). A district court shall "require payment of full restitution" as part of a criminal sentence if it finds that the victim has sustained a pecuniary loss. Section 46-18-201(5), MCA. If the court awarded damages under (1)(a) then it was incorrect as a matter of law because civil plaintiffs are not awarded damages for mileage, missed work, or other expenses incurred attending routine litigation proceedings.

15

¶34    If the court awarded damages under (1)(b), then those damages must be "reasonable." Richards objected to the amount of damages. This Court, however, avoids the reasonableness inquiry imposed by subsection (1)(d), and concludes that because Richards did not present evidence contrary to the victim's affidavit then the victim's self-declared damages must be accepted by the court. I am unimpressed by this reasoning given the statute's clear mandate that damages be "reasonable" and given the facts of this case.

¶35    Here, Dorman claimed $40 per hour in childcare costs, totaling $1,280. She claimed five roundtrips for court hearings, however her affidavit shows she attended only three court hearings: arraignment, omnibus, and pretrial hearing. She subsequently attended the sentencing hearing which was reasonable. Aside from the sentencing hearing, the arraignment, omnibus and pretrial hearings were not reasonable out-of-pocket expenses incurred "by the victim in filing charges or in cooperating in the investigation and prosecution of the offense." Section 46-18-243(1)(d), MCA. While Dorman had the right to attend these hearings, her presence was not required to assist or cooperate with the prosecution, and she did not contribute to those hearings. I would conclude it was not an expense that was reasonable to incur under subsection (1)(d).

¶36    I would likewise conclude that $40 per hour for childcare appears unreasonable and that there should have been some inquiry by the court concerning why this high amount was necessary or reasonable. Childcare costs of $40 per hour would make obtaining childcare unreasonable and unaffordable in most family households.

16

¶37 The Court maintains that Richards did not make any of these "statutory arguments" in the District Court. But Richards did. Richards acknowledged that Dorman was entitled to be in court for sentencing, "but the other four trips, we argue, and I'm not sure exactly what were required from the County Attorney . . . were unnecessary . . . and . . . by choice." This is a clear reference to the statute's definition of pecuniary loss relating to subsection (1)(d)—"cooperating in the investigation and prosecution of the offense." Further, Richards argued "the final item on the description of pecuniary loss, cost of babysitter for four children due to [c]ourt appearances for two days at $40 per child times 8 hours for a total of $1,280 is excessive and we argue . . . that Mr. Richards should not be accountable for that amount. [W]e would ask the [c]ourt to adjust the amount as the [c]ourt sees fit." This likewise is a direct reference to the pecuniary loss statute—something that is "excessive" is not "reasonable." To construe these objections as not based on the pecuniary loss statute is ingenious at best; but, more alarming, it is an unfair interpretation by this Court of what Richards and his counsel were undeniably communicating to the District Court. The integrity of this Court's decisions depends on a fair interpretation of the record. The District Court knew exactly that Richards was objecting to the number of trips Dorman made by choice and that he challenged the $40 per hour rate paid to the babysitter. Moreover, in my opinion, the court has an independent obligation to inquire, particularly under the circumstances here, whether the out-of-pocket expenses are reasonable. While a defendant has the obligation to make an objection, which was done here, that obligation does not relieve the court of its independent obligation of following a statute and ensuring that costs imposed are reasonable. The Court takes the position that

17

the unrebutted affidavit of Dorman is enough to establish pecuniary loss and then applies an inflexible, technical, and mechanistic interpretation of a statute, despite the statute's textual requirement that costs be reasonable and in cooperation with the prosecution. Opinion, ¶ 21. This inflexible interpretation of pecuniary loss means that if Dorman had asked for $1,000 an hour in babysitter costs or made even more unnecessary trips to the courthouse, that those costs must be covered because there is no requirement that attendance be "necessary" or costs reasonable when a defendant does not produce evidence to the contrary. I would remand for the District Court to address the *reasonableness* of Dorman making four unnecessary trips to court and spending $40 an hour on childcare, as § 46-18-243, MCA, requires.

¶38     To the extent the Court holds otherwise, I dissent.


                                        /S/ LAURIE McKINNON